**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM BERGEN,**

      **Plaintiff,**

**v.**                                  **CASE NO.:**

**EVICORE HEALTHCARE MSI, LLC,**
**a Foreign Limited Liability Company,**

      **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM BERGEN ("Plaintiff" or "Dr. Bergen") files suit against the Defendant, EVICORE HEALTHCARE MSI, LLC, a Foreign Limited Liability Company ("Evicore" or "Defendant"), and alleges as follows:

1.     Plaintiff brings these claims for disability discrimination and retaliation against Defendant for its separation of Plaintiff based upon his disability, or "perceived disability," in violation of the Americans with Disabilities Act of 1990, as amended. 42 U.S.C. § 12101 et seq. ("ADA"). Plaintiff is seeking damages including back pay, front pay, compensatory damages, punitive damages, and his attorneys' fees and costs.

## JURISDICTION

2.     The Court has original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 as they arise under 42 U.S.C. § 12101 *et seq.*   Specifically, Plaintiff was discriminated against, treated differently than other employees, and ultimately separated, solely because of his disability, and/or "perceived disability."

## VENUE

3.      Venue is proper because Defendant conducts substantial business in Brevard County, Florida, and Plaintiff worked for Defendant in Brevard County, Florida, where the actions at issue took place.

## PARTIES

4.      At all times material, Plaintiff was a resident of Brevard County, Florida.

5.      During the relevant limitations period, Plaintiff was an employee of Defendant in Brevard County, Florida.

6.      Plaintiff is protected by the ADA because: (a) he was a disabled or "perceived as disabled" employee who suffered discrimination and harassment because of his disability or "perceived disability" by Defendant; and (b) he suffered adverse employment action and was subjected to an increasingly hostile work environment as a result of his disability or "perceived disability" in retaliation for objecting to same.

7.      Defendant was at all material times an "employer" as defined by the ADA.

## CONDITIONS PRECEDENT

8.      Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant.

9.      On September 10, 2019, the EEOC mailed Plaintiff a Notice of Right to Sue, giving Plaintiff the right to bring a civil action on his ADA claims within 90 days of his receipt of the same.

10.     Plaintiff timely files this action within the applicable period of limitations against Defendant.

11.     All conditions precedent to this action have been satisfied and/or waived.

2

## **FACTUAL ALLEGATIONS**

12.      Dr. Bergen, worked for Defendant as an Associate Medical Director from November 7, 2011, until his separation on February 13, 2015.

13.      During his tenure with Defendant, Dr. Bergen had no legitimate documented history of attendance, performance, or disciplinary issues.

14.      To the contrary, Dr. Bergen had an accuracy rate of well over 99%, was one of the most productive physicians in the company, and never had a case come back with a documented medical judgment error during his tenure.

15.      Dr. Bergen's evaluations, including the last ones prior to his separation, were well regarded when describing his work.

16.       Indeed, his supervisor, Dr. Steven Israel, used the word "perfect" in Dr. Bergen's last three (3) evaluations, and told Dr. Bergen, "you are perfect.  Don't change a thing."

17.      After a trip to Colorado and Utah in the Summer of 2014, Dr. Bergen asked Dr. Israel if he could work remotely on occasion.

18.      Dr. Israel agreed with this request, and even encouraged it.  To that end, Dr. Israel told Dr. Bergen that he didn't even need to ask permission from him, he just needed to make sure "Diane" (the office Secretary) knew how to get in touch with him when he worked remotely, and Dr. Bergen could not be away when Medsolutions was training new physicians.

19.      Otherwise, Dr. Israel stated that Dr. Bergen was "established" and should start taking advantage of that particular benefit of the job.

20.      The idea of Dr. Bergen working remotely on an ongoing basis was not specifically addressed in this meeting, but Dr. Israel told Dr. Bergen that taking multiple blocks would be acceptable.

21.     Because of this conversation, Dr. Bergen's domestic partner withdrew her daughter from public school and enrolled her in Florida Virtual School to facilitate his new flexible travel schedule.

22.     Defendant's Employee Handbook, which was issued to Dr. Bergen at the time of his hiring, specifically permitted employees with a minimum of six (6) months of service in the company to work remotely, if they were in the top 40% of their peers in areas such as metric scorecard results (including productivity and quality), attendance, and other areas.

23.     At all times during his employment with Defendant after his first six (6) months of employment, Dr. Bergen easily met, and far surpassed, these minimal requirements to work remotely.

24.     In the Fall of 2014, Dr. Bergen's partner fell extremely ill, requiring Dr. Bergen to stay home to take care of her medical needs.

25.     Dr. Bergen worked remotely during that time and performed his required job duties and responsibilities.

26.     Around this time, Dr. Bergen disclosed to Dr. Israel that he was suffering from medical disabilities, and that working remotely on occasion allowed him to perform the essential functions of his position.

27.     During the time period Dr. Bergen was working remotely, Dr. Israel contacted him, threatening him with adverse employment actions and forbidding him to work remotely for more than one (1) day per week from home ever again.

28.     During this call, Dr. Bergen reminded Dr. Israel of his disabilities, and asked for reasonable accommodation for same, including, being able to work remotely on occasion like other qualifying doctors and qualifying employees of Defendant.

29.     To that end, Dr. Bergen mentioned Defendant's unambiguous written policies in the Employee Handbook about remote work, and advised Dr. Israel that his position was contrary to company policy.

30.     Dr. Israel angrily retorted that "the Employee Handbook does not apply to you, and if you pursue that avenue, it will end very badly for you."

31.     In early 2015, Dr. Bergen was scheduled to work remotely for an indefinite period of time due to office renovation; during that time, Dr. Bergen stopped his medication program related to his disability, pursuant to his psychiatrist's direction.

32.     Without notice however, Dr. Israel cancelled Dr. Bergen's scheduled remote working and said that he had found an office for Dr. Bergen to work in the building.

33.     Because Dr. Bergen had stopped his medication already, Dr. Bergen nodded off at his computer on one occasion due to the fatigue he was suffering at that time from his disabilities and medication change.

34.     At that time, he again asked Dr. Israel for the reasonable accommodation of being permitted to work remotely on occasion based on the circumstances, like other of Defendant's non-disabled physicians within the company.

35.     Dr. Bergen requested this accommodation to assist with the treatment of, and ability to deal with, his disability and its related symptoms.

36.     In response, Dr. Israel angrily told Dr. Bergen that he would never work a remote day ever again, that he needed to be in the office every day to be monitored, and threatened to fire Dr. Bergen if he made any further inquiries into the tele-working program, or had a single adverse incident of any sort.

37.     Dr. Bergen, faced with the dilemma of not being afforded a reasonable accommodation for his disabilities that was afforded to others, as well as threats against his employment for requesting same, left him with no alternative but to resign his employment with Defendant.

38.     A reasonable person in Dr. Bergen's position would likewise have felt compelled to resign under similar circumstances.

39.     Dr. Bergen is an individual with disabilities who, with minimal reasonable accommodation, was fully capable of performing the essential functions of his job as an Associate Medical Director.

40.     That Defendant routinely approved the very accommodation that Dr. Bergen asked for – the ability to work remotely on occasion – for other non-disabled disabled qualifying physicians, dramatically underscores the illegality of Defendant's discriminatory and retaliatory actions with respect to Dr. Bergen.

41.     Dr. Bergen's requested accommodation would have imposed no undue hardship on Defendant.

42.     An employer is required to provide its disabled employees with a reasonable accommodation, if that reasonable accommodation would allow that employee to perform the essential functions of his job, unless doing so would impose an undue hardship.

43.     "Reasonable accommodation" under the ADA may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . .and other similar accommodations." 42 U.S.C. § 12111(9)(B).

44.     It is unlawful for an employer to discriminate/retaliate against an employee who seeks workplace accommodations, which is exactly what occurred based on Dr. Bergen's request for reasonable accommodation under the ADA.

45.     By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions, or privileges" of Plaintiff's employment as envisioned by the ADA.

46.     At all material times hereto, Plaintiff was ready, willing and able to perform his job duties and otherwise qualified for his position with an accommodation as permitted by law.

47.     Pleading in the alternative, Plaintiff's impairment did not substantially limit a major life activity but was treated by Defendant as if he did.

48.     Pleading in the alternative, Plaintiff's medical condition constituted an impairment that limited a major life activity only because of Defendant's attitude toward the impairment.

49.     Defendant does not have a non-discriminatory rationale for its actions toward Plaintiff.

50.     Plaintiff suffered sufficiently severe and pervasive treatment because of his disability and/or "perceived disability."

**COUNT I:**
**AGAINST DEFENDANT FOR DISCRIMINATION UNDER THE ADA**
**BASED ON DISABILITY**

51.     Plaintiff realleges and adopts the allegations contained in paragraphs 1-50 as if fully set forth in this Count.

52.     The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADA.

53.     The discrimination to which Plaintiff was subjected was based on his disability and/or "perceived disability."

54.     The conduct of Defendant its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

55.     The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant to deter it, and others, from such conduct in the future.

56.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to the ADA.

57.     Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

## REQUEST FOR RELIEF AS TO COUNT I

WHEREFORE, Plaintiff prays that this Court will:

58.     Issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of Plaintiff's rights under the ADA;

59.     Require that Defendant make Plaintiff whole for his losses suffered as a result of the discrimination through reinstatement, or, if that is not practical, through an award of front pay;

60.     Grant Plaintiff a judgment against Defendant for damages, including punitive damages;

61.     Award Plaintiff his reasonable attorney's fees and litigation expenses against Defendant pursuant to the ADA.

62.     Provide any additional relief that this Court deems just.

## COUNT II:
## RETALIATION UNDER THE ADA

63.     Plaintiff realleges and adopts the allegations contained in paragraphs 1-45 as if fully set forth in this Count.

64.     Plaintiff was retaliated against within days of his request for reasonable accommodation for his disability.

65.     Plaintiff's multiple requests for a reasonable accommodation constituted protected activity under 42 U.S.C. § 12203(a)-(b) of the ADA.

66.     Plaintiff was constructively discharged, and retaliated against, as a direct result of his requests for accommodation.

67.     Plaintiff's request for accommodation and his separation are causally related and share a close temporal proximity.

68.     Defendant's denial of Plaintiff's request for accommodation and threats toward him regarding same were not based on any legitimate reason, but rather because Defendant intended to discriminate against Plaintiff based on his disability.

## REQUEST FOR RELIEF AS TO COUNT II

WHEREFORE, Plaintiff prays that this Court will:

69.     Issue a declaratory judgment that the retaliation against Plaintiff by Defendant was a violation of Plaintiff's rights under Title VII;

70.     Require that Defendant make Plaintiff whole for his losses suffered as a result of the retaliation through reinstatement, or, if that is not practical, through and award of front pay;

71.     Grant Plaintiff a judgment against Defendant for damages, including punitive damages;

72.     Award Plaintiff his reasonable attorneys' fees and litigation expenses against Defendant pursuant to 42 U.S.C. § 2000e-5(k); and

73.     Provide any additional relief that this Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

DATED this 23rd  day of September 2019.

Respectfully Submitted,

*/s/ Noah E. Storch*
/s Noah E. Storch
Noah E. Storch, Esq.
Florida Bar No. 0085476
Email: noah@floridaovertimelawyer.com
RICHARD CELLER LEGAL, P.A.
10368 West State Road 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771

*Attorneys for Plaintiff*